IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SELECTIVE WAY INSURANCE )
COMPANY, )
 )
      Plaintiff, )
 ) Civil Action No. 06-1211
vs. )
 )
RHJ MEDICAL CENTER, INC., )
RUDOLPH ANTONCIC, III, M.D. a/k/a )
RUDY ANTONCIC, III, M.D. a/k/a )
RUDOLPH ANTONCIC, M.D., )
 )
      Defendants and Third-Party )
      Plaintiffs, )
 )
vs. )
 )
SHAND MORAHAN & COMPANY, INC. )
d/b/a EVANSTON INSURANCE )
COMPANY, )
 )
      Third-Party Defendants. )

AMBROSE, Chief District Judge

**OPINION AND ORDER**

**Synopsis**

This action involves an insurance policy issued by third-party defendant Evanston Insurance Company ("Evanston") on behalf of third-party plaintiff RHJ Medical Center, Inc. (the "Center"). The Center seeks coverage under the policy for claims asserted against it and third-party plaintiff Rudolph Antoncic, III, M..D. ("Dr. Antoncic") (collectively, "Third Party Plaintiffs") in a wrongful death action involving the murder of a woman by one of the Center's

1

and Dr. Antoncic's patients. Evanston moves for summary judgment on its counterclaims and dismissal of the third-party complaint on the grounds that the unambiguous terms of the insurance policy do not provide coverage for either the Center or Dr. Antoncic. Third-party Plaintiffs cross-move for summary judgment on their breach of contract and bad faith claims. For the reasons set forth below, I grant Evanston's motion for summary judgment dismissing the Third Party Complaint against it, deny its motion seeking dismissal of the Third Party Complaint against Shand Morahan & Company, Inc. and deny Third-Party Plaintiffs' cross-motion for summary judgment in its entirety.

## I. Applicable Standards

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Internat'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S.

2

242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

## II. Procedural Background

This coverage action relates to an underlying wrongful death lawsuit currently pending against the Center, Dr. Antoncic and other defendants in the Court of Common Pleas for Westmoreland County, Pennsylvania, captioned Diane L. Demorest, Individually, and as Administriatix of the Estate of Candace S. Cohen, Deceased on behalf of next of kin Candace S. Cohen, Deceased v. Jeffrey West, RHJ Medical Center, Inc., Rudolph Antoncic, III, M.D. a/k/a Rudy Antoncic, III, M.D. a/k/a Rudolph Antoncic, M.D. and Lee J. Harmatz, M.D. (the "Wrongful Death Action"). The Wrongful Death Action alleges that Jeffrey West, a patient at the Center under the care of Dr. Antoncic, murdered Candace S. Cohen as a result of the carelessness, recklessness, negligence and malpractice of the Center and Dr. Antoncic. The

3

Wrongful Death Action seeks damages from the Center and Dr. Antoncic resulting from the fatal injuries to and death of Ms. Cohen, including her pain and suffering and the loss of earnings, services and support she would have provided during her life. A copy of the complaint in the Wrongful Death Action is attached as Exhibit C to the Joint Stipulations of Fact filed by the Center, Dr. Antoncic and Evanston. [Docket No. 88-2, at 47].

On September 13, 2006, plaintiff Selective Way Insurance Company ("Selective") filed a complaint against the Center and Dr. Antoncic seeking a declaratory judgment that the commercial general liability policy issued by Selective to the Center provided no coverage for claims in the Wrongful Death Action. By opinion and order dated June 1, 2007 [Docket No. 49], I granted Selective's motion for judgment on the pleadings, holding that Selective had no obligation to defend the Wrongful Death Action because its policy excluded coverage for the claims at issue.

This third-party action was commenced by the Center and Dr. Antoncic against Shand Morahan & Company, Inc. ("Shand") d/b/a Evanston Insurance Company and other defendants in March 2007, and an amended third party complaint was filed on July 13, 2007. [Docket No. 56.] The Amended Third-party Complaint asserted two claims against Shand d/b/a Evanston: (1) a claim for breach of contract arising from Shand d/b/a Evanston's refusal to defend or indemnify Third Party Plaintiffs in the Wrongful Death Action; and (2) a bad faith claim against Shand d/b/a Evanston alleging that Third Party Plaintiffs are entitled to damages for the breach of the duty of good faith and fair dealing and violations of Pennsylvania's Unfair Insurance Practices Act, 42 Pa.C.S. § 8371. The Center and Dr. Antoncic subsequently dismissed their third party action against all third party defendants with the exception of Shand d/b/a Evanston.

4

Evanston filed an amended answer to the amended third party complaint on behalf of itself and "on behalf of the improperly named and incorrectly identified Third Party Defendant Shand Morahan & Company, Inc." (the "Amended Answer") [Docket No. 83.] In the Amended Answer, Evanston asserted a counterclaim against the Center and Dr. Antoncic seeking declaratory relief that it has no duty to defend, indemnify or provide coverage to the Center or Dr. Antoncic with respect to the Wrongful Death Action, and that it has no obligation to reimburse the Center or Dr. Antoncic for legal fees or expenses that they incur or have incurred to defend the Wrongful Death Action. [Id. at 20.]

### III. Relevant Factual Background

Evanston issued the Center a Specified Medical Professional Liability Insurance Policy, policy no. SM-835629 (the "Policy"), for the policy period of June 21, 2005 to June 21, 2006. [Docket No. 88-2, at 6.] The Center is the named insured under the Policy and its profession is identified as "methadone clinic." The Policy provided, in relevant part:

**THE COVERAGE**

> 1. **Professional Liability and Claims Made Clause:** To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD for personal injury by reason of any negligent act, error or omission in professional services rendered or that should have been rendered subsequent to the retroactive date specified in the Declarations by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession as described in Item 3 of the Declarations provided that:
>
> (a) the Insured had no knowledge of any claim or suit, or any act, error or omission, which might reasonably be expected to result in a claim or suit as of the date of signing the application for this insurance;
>
> (b) there are no other certificate or policies of insurance pursuant to which the

5

Insured is afforded any coverage for such claim or suit.

[Docket No. 88-2, at 11.] The Policy defines the term "personal injury," in relevant part, as: "Personal Injury means whenever used in this policy. . .any physical or mental injury or death of any patient." [Id.]

The term "Insured" is also defined in the Policy as, in relevant part:

**THE INSURED**

The unqualified word "insured" whenever used in this policy means:

(a) the Named Insured as designated in the Declarations, and

(b) any principal, partner, officer, director, employee, volunteer worker or any former partner, director, employee, or volunteer worker of the Named Insured, while acting within the scope of his duties as such; however, this insurance shall not apply to any claim made against any Insured who is a physician, surgeon or dentist arising out of the rendering of or failure to render professional services in his capacity as a physician, surgeon or dentist.

[Id.]

There is no dispute as to the relevant Policy or its terms in this action; the parties' only dispute relates to the meaning of the terms.[1] Similarly, the parties do not dispute that the Center received notice of the claims in the Wrongful Death Action during the policy period, and duly notified Evanston of the claims.

As I briefly outlined above, the Wrongful Death Action alleges that one of Dr. Antoncic's patients at the clinic, Jeffrey West, stabbed to death a woman with whom he'd had a prior

---

[1] The Third Party Complaint references a renewal policy, no. SM 843072. The parties agree that the relevant policy is SM-835629. [See Joint Stipulation of Facts, Docket No. 88-2, at ¶ 8.] Accordingly, I grant summary judgment in favor of Evanston on Count II of its Counterclaim, which addresses the renewal policy. The remainder of this Opinion addresses SM-835629.

relationship, Ms. Cohen, at a bar in Greensburg, Pennsylvania. At the time of the murder, the Center and Dr. Antoncic, a psychiatrist and an employee of the Center, allegedly were providing psychological, therapeutic and medical treatment to Mr. West, including prescribing various psychotropic medications for him, treating him for anxiety, depression and substance abuse, and enrolling him in a methadone maintenance program. Prior to the murder and while being treated at the Center, Mr. West allegedly had threatened harm to Ms. Cohen. Mr. West was convicted of third degree murder and is currently incarcerated in a state prison.

## IV. Evanston's Motion for Summary Judgment

### A. Evanston's Duty to Defend and Indemnify

Pennsylvania law, as it applies to the interpretation of insurance contracts, is not disputed by the parties. Under Pennsylvania law of insurance contract interpretation, the insurance policy should be read as a whole and construed according to its plain meaning. See, e.g., Atlantic Mut. Ins. Co. v. Brotech Corp., 857 F. Supp. 423, 427 (E.D. Pa. 1994), aff'd, 60 F.3d 813 (3d Cir. 1995). "The primary goal of insurance policy interpretation is to ascertain the intent of the parties as manifested in the words of the policy itself." Miller Capital Ins. Co. v. Gambone Bros. Dev. Co., 941 A.2d 706, 712 (Pa. Super. 2007). "When policy language is unambiguous, [the court] give[s] effect to that language." Id. A provision is ambiguous when reasonable people fairly could ascribe differing meanings to it." Atlantic Mut. Ins. Co., 857 F. Supp. at 427. "In determining whether a contract is ambiguous, the court must examine the questionable term or language in the context of the entire policy and decide whether the contract is reasonably susceptible of different constructions and capable of being understood in more than one sense." Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997). The interpretation of an

insurance policy is a question of law for the court. Kvaerner Metals Div. of Kvaerner U.S. Ins. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006).

The Center claims that Evanston breached its obligations to both defend and indemnify it under the terms of the Policy. "It is axiomatic that an insurance provider's duty to indemnify and/or defend a policy holder against a suit brought by a third party is based on a determination as to whether the third party's complaint triggers coverage." Miller Capital Ins. Co., 941 A.2d at 712. The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage. Erie Ins. Exchange v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987). An insurer owes a duty to defend under a policy when "the allegations in the complaint against [the insured] could potentially fall within the coverage of the policy." Air Prods. & Chems. v. Hartford Acc. & Indem. Co., 25 F.3d 177, 179 (3d Cir. 1994). The insurer agrees to defend the insured against any suits arising under the policy "even if such suit is groundless, false, or fraudulent." Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 321 (Pa. 1963). The duty to defend is triggered even if only one of several claims in a complaint against an insured potentially falls within the policy's coverage. Nationwide Mut. Ins. Co. v. Shank, 951 F. Supp. 68, 71 (E.D. Pa. 1997).

Here, the Policy provides coverage for "damages as a result of claims. . .for personal injury by reason of any negligent act, error or omission in professional services rendered or that should have been rendered. . . ." [Docket No. 88-2, at 11.] Inserting the Policy's definition of personal injury for that term in the coverage provision, the Policy provides coverage for "damages as a result of claims. . .[for any physical or mental injury to or death of any patient] by reason of any negligent act, error or omission. . . ." It is undisputed that neither the named

plaintiff nor the deceased in the Wrongful Death Action were patients of the Center or Dr. Antoncic. (Evanston Mem. at 11, n. 7.)

The Center argues that the Wrongful Death Action alleges an injury to Jeffrey West, undisputedly a patient of the clinic and Dr. Antoncic, which in turn caused the injury to the plaintiff in the Wrongful Death Action. For instance, the Underlying Complaint alleges that the injuries to the decedent and the damages were the direct and proximate result of the malpractice of the Center and Dr. Antoncic in (1) encouraging Mr. West to express emotions of anger toward the decedent; (2) providing counseling and/or therapy to Mr. West which encouraged him to act upon his emotions of rage; (3) encouraging Mr. West to express emotions of anger toward the decedent even though the Center and Dr. Antoncic knew that Mr. West was on methadone maintenance and under the influence of alcohol and drugs; (4) prescribing a methadone dose that was too high; (5) prescribing methadone in conjunction with Xanax, thereby disinhibiting Mr. West's emotions of anger toward the decendent; and (5) prescribing methadone when the Center knew or should have known that Mr. West was abusing it. (Center Mem. at 7-8.) According to the Center and Dr. Antoncic, "[b]ecause several claims alleged in the [Wrongful Death Action] arise out of injuries to a patient of the insured, the unambigious terms of the Policy Agreement establish coverage." (Id.)

I disagree with the Center's interpretation of the Policy. While the Wrongful Death Action may allege an injury to Mr. West, the Policy does not provide coverage for claims *arising from* the death or injury of a patient, but rather to damages as a result of claims. . *for* any

physical or mental injury to or death of any patient.[2] The Wrongful Death Action does not present a claim on behalf of Mr. West or his representative for his physical or mental injury or death. Accordingly, I find that the Policy unambiguously does not provide coverage for the Wrongful Death Action. Since no coverage applies under the clear terms of the Policy, Evanston had no duty to defend or indemnify the Center with respect to the Wrongful Death Action.

The Center's reliance on Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286 (Pa. 2007), is misplaced. In Donegal, the adult son of the insured homeowners killed several persons and seriously injured another. A wrongful death and personal injury action was asserted against the parent homeowners, alleging damages as a result of the parents' negligent failure to obtain treatment for their son and failure to take a handgun away from him and alert the authorities. The parents' insurance policy, issued by Donegal, provided coverage for "claims brought against an insured for damages resulting from bodily injury caused by an 'occurrence.' 938 A.2d at 289. The policy defined an occurrence as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period. . .in bodily injury or property damage." Id. The term 'accident' was not defined in the policy. Applying Pennsylvania case law interpreting the term "accident," the court held that the son's shooting spree constituted an accident for purposes of the policy, and therefore Donegal had a duty to defend and to indemnify the insured. 938 A.2d at 293.

The terms of the Policy herein are not identical, or even analogous, to the terms of the policy at issue in Donegal. While the court in Donegal found, in accordance with the terms of its

---

[2]Indeed, other provisions of the Policy utilize the term "arising out of," demonstrating that the parties understood the meaning of that term and chose not to include it in the Coverage provision or the definition of personal injury. See Docket No. 83-2, at 8.

policy, that the policy applied to claims brought by third parties resulting from an accident, that same language is not present in this Policy. Accordingly, Donegal does not require me to extend the terms of the Policy, which unambiguously covers only claims for death of or injury to a *patient*, to claims brought by third parties for injuries they suffered.[3]

Finally, I do not find any "latent ambiguity" in the terms of the Policy. A latent ambiguity "arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous." Allegheny Internat'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424 (3d Cir. 1994). "The usual instance of a latent ambiguity is one in which a writing refers to a particular person or thing and is thus apparently clear on it face, but upon application to external objects is found to fit two or more of them equally." Steuart v. McChesney, 444 A.2d 659, 664 (Pa. 1982) (citations omitted). Examples of latent ambiguities include (1) where an insurance policy covered a "hay house" but there were two "hay houses"; (2) where an insurance policy insured two chicken houses for different amounts but did not designate which was chicken house number one and which was chicken house number two; (3) or where the contract references dollars, but the parties intended that to mean Canadian dollars. See Metzger v. Cliffor Realty Corp., 476 A.2d 1, 5 n.2 (Pa. Super. 1984); Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 n.3 (3d Cir. 2001). Thus, "a claim of latent ambiguity must be based on a "contractual hook": the proffered extrinsic evidence must support an alternative meaning of a specific term or terms

---

[3]While the Center argues that this interpretation would preclude claims of wrongful death brought by a deceased patient's estate or next of kin (Center Mem. at 10), Evanston denies that "a wrongful death action filed by the estate of a patient for the death of a patient caused by the alleged negligence of the insured would not be covered under the terms of a policy that insures against claims for the death or injury of the insured's patients." (Reply Mem. at 5, n. 2.)

11

contained in the contract, rather than simply support a general claim that the parties meant something other than what the contract says on its face. In other words, the ambiguity inquiry must be about the parties' "linguistic reference" rather than about their expectations." Bohler-Uddeholm America, 247 F.3d at 96.

The latent ambiguity asserted by the Center does not relate to an alternative meaning of a specific term in the Policy, but merely recasts its argument that the coverage provision of the Policy is ambiguous. This argument does not demonstrate a latent ambiguity in the Policy which would require me to look at evidence outside the unambiguous terms of the Policy.

Based on the foregoing, I grant Evanston's motion for summary judgment dismissing the Center's claims for breach of contract.

### C. Evanston's Obligation To Indemnify and/or Defend Dr. Antoncic

Evanston seeks summary judgment declaring it has no obligation to defend and/or indemnify Dr. Antoncic with respect to the Wrongful Death Action. While the Policy insures the Center's employees, it contains an express exception for "any claim made against any such Insured who is a physician, surgeon or dentist arising out of the rendering or failure to render professional services in his capacity as a physician, surgeon or dentist." [Docket No. 83-2, at 6.] Dr. Antoncic was sued in the Wrongful Death Action in his capacity as a physician rendering professional services to Mr. West. Accordingly, Dr. Antoncic is not covered by the Policy, and Evanston had no obligation to defend and/or indemnify him. Notably, Third Party Plaintiffs have not disputed this argument.

Accordingly, I grant summary judgment on behalf of Evanston declaring that it had no obligation under the Policy to indemnify and/or defend Dr. Antoncic.

12

### C. Bad Faith

The Center and Dr. Antoncic have a asserted a claim for bad faith against Evanston based on its refusal to defend and indemnify them with respect to the Wrongful Death Action. Under Pennsylvania law, a plaintiff asserting a claim for bad faith must prove: (1) the insurer lacked a reasonable basis for denying benefits; and (2) the insurer knew of or recklessly disregarded its lack of reasonable basis. See Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000); Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.230, 234 (3d Cir. 1997). A finding by the court that an insurer had no duty to defend defeats a insured's claim for bad faith. See Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) ("[B]ad faith claims cannot survive a determination that there was no duty to defend, because the court's determination that there was no potential coverage means that the insurer had good cause to refuse to defend."); Pizzini v. American Intern. Specialty Lines Ins. Co., 249 F. Supp.2d 569, 570-71 (E.D. Pa. 2003).

As I held in Part IV(A) and (B) above, Evanston had no duty under the terms of the Policy to defend or indemnify Third-Party Plaintiffs with respect to the Wrongful Death Action. Accordingly, Evanston is entitled to summary judgment dismissing Third Party Plaintiffs' claim for bad faith.

## V. The Status of Shand Morahan & Company, Inc.

In the Third Party Complaint [Docket No. 56], Third Party Plaintiffs sued Shand Morahan & Company, Inc. d/b/a Evanston Insurance Company. The Third Party Complaint was answered by Evanston "on behalf of itself and on behalf of the improperly named and incorrectly identified Third Party Defendant Shand Morahan & Company." [Docket No. 83, at 2.] In its answer,

Evanston admits that Shand is the underwriting manager for Evanston and that Evanston and Shand are each wholly owned subsidiaries of Markel Corporation. [Id. at 3, ¶ 4.] In support of its motion for summary judgment, Evanston submits the Declaration of Frances O'Connell, Vice President of Markel Shand, Inc., a company previously named Shand Morahan & Company, Inc. [Docket No. 88-3.] Ms. O'Connell affirms the statements in Evanston's answer, and further affirms that Evanston and Shand are distinct and separate corporations. [Id. at 2, ¶3.]

While it appears from the evidence submitted in support of Evanston's motion for summary judgment that Shand is not a proper party to this action and has no liability to Third Party Plaintiffs under the Policy, unfortunately I cannot grant summary judgment dismissing Shand at this juncture. The motion for summary judgment was submitted by Evanston through counsel for Evanston. Evanston has no standing to seek dismissal of claims against another named party in the action, where that party is a separate and distinct corporate entity from Evanston. Nor is there is evidence before me that counsel for Evanston also represents Shand and is authorized to move for relief on its behalf. Under these circumstances, Evanston's motion for summary judgment dismissing the Third Party Complaint with respect to Shand is denied. Counsel for Shand may file a motion for summary judgment dismissing the action against it no later than December 22, 2008.

## Conclusion

Based on the foregoing, Evanston's motion for summary judgment dismissing the Third Party Complaint against it is granted, and Evanston's motion for summary judgment dismissing the Third Party Complaint against Shand is denied. Third Party Plaintiffs' cross-motion for summary judgment is denied in all respects.

## ORDER OF COURT

Having carefully considered Evanston's motion for summary judgment [Docket No. 86], and Third Party Plaintiffs' opposition thereto and cross- motion for summary judgment [Docket No. 89], and Evanston's reply thereto [Docket No. 90], it is hereby ORDERED that

(1) Evanston's motion for summary judgment dismissing the Third Party Complaint against it is granted;

(2) Evanston's motion for summary judgment dismissing the Third Party Complaint against Shand is denied;

(3) Any motion for summary judgment on behalf of Shand dismissing the Third Party Complaint against it shall be filed on or before December 22, 2008. Any response thereto shall be filed by Third Party Plaintiffs on or before January 12, 2009; and

(4) Third Party Plaintiffs' cross-motion for summary judgment is denied.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge